UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------X

Arlene Perez and Celeste Williams,                CV-05-4873
                                                  (CPS)(JMA)
                    Plaintiffs,

     - against -

Jason Siragusa, a police officer employed         MEMORANDUM
by the New York City Police Department,           OPINION &
Michele Antoniato, a police officer               ORDER
employed by the New York City Police
Department, Emily Biondo, and Frank Biondo,


                    Defendants.
----------------------------------------X
SIFTON, Senior Judge.


     Plaintiffs Arlene Perez and Celeste Williams commenced this

action on October 18, 2005 against defendants Emily and Frank

Biondo (collectively "the Biondos"), and New York City Police

Department officers Jason Siragusa and Michele Antoniato

(collectively "the City defendants") alleging federal and state

civil rights violations under 42 U.S.C. §§ 1981, 1982, 1983,

3617, and New York State Human Rights law as well as state

malicious prosecution and intentional infliction of emotional

distress claims.[1]  Plaintiffs seek damages, injunctive relief and

attorney's fees and costs.  Presently before the Court is the

plaintiffs' objection to Magistrate Judge Joan Azrack's Report

_____

[1] Co-defendant Andrea Mendelson was dismissed with prejudice from this
action by stipulation on October 25, 2006.  Plaintiffs have withdrawn their
claims under 42 U.S.C. §§ 1981, 1982, 1367 and New York State Human Rights Law
along with three affirmative defenses with respect to the Biondos'
counterclaims.  Plaintiffs' Letter, dated March 14, 2008; Minute Entry
Proceedings, February 28, 2008.

and Recommendation, dated May 14, 2008, recommending the dismissal of the action with prejudice and an award of attorneys' fees for the defendants. For the reasons set forth below, I adopt Magistrate Judge Azrack's Report and Recommendation in part and modify it in part.

**Background**

The following facts are drawn from the pleadings, the prior proceedings before the undersigned and the parties' submissions in connection with the May 14, 2008 Report and Recommendation.

Plaintiffs are mother and daughter who leased an apartment from defendant Emily Biondo from January 2004 until October 19, 2004 in Queens, New York. Amended Complaint ¶ 9. Frank Biondo is Emily Biondo's son and plaintiffs allege that he acted as an agent of Emily Biondo in the management and control of the building in which plaintiffs resided. *Id.* ¶ 8. Plaintiffs allege that the Biondos subjected them to harassment on account of their African-American race. *Id.* ¶ 10.

On or about October 5, 2004, defendant Emily Biondo caused to be served upon the plaintiffs a sixty day notice to vacate the premises on account of the plaintiffs' alleged failure to pay rent. Biondos' Answer ¶¶ 91 and 94. The Biondos allege that the plaintiffs began a campaign of harassment and threats against Emily Biondo in reaction to her rent demands, causing her to be afraid to reside in her own home. *Id.* ¶¶ 97, 101.

Plaintiffs allege that the Biondos subjected them to racially motivated harassment on October 19, 2004. Amended Complaint ¶ 12. The Biondos allege that plaintiff Celeste Williams threw an open bottle of bleach at them, which struck Emily Biondo in her eye and on her face. Biondos' Answer ¶ 104. The police were called and defendant officers Siragusa and Perez responded. *Id.* ¶ 105; Amended Complaint ¶ 12.

Plaintiffs allege that upon their arrival, the officers only spoke with the Biondos. Amended Complaint ¶ 14. Williams was arrested, followed by Perez. *Id.* ¶¶ 14-15. Plaintiffs allege that during the course of their arrests, defendant police officers punched, kicked, and assaulted them. *Id.* ¶ 16.

On October 20, 2004, both Perez and Williams were arraigned in Queens County Criminal Court. *Id.* ¶¶ 19-20. On December 2, 2004 all charges against Williams were dismissed. *Id.* ¶ 20. On June 14, 2005 all charges against Perez were dismissed. *Id.* ¶ 19.

*Procedural History*

On October 18, 2005 plaintiffs filed the complaint in this action, which was later amended on February 3, 2006.

On June 6, 2006 an initial conference was held before Magistrate Judge Azrack, who issued the following deadlines: written discovery to be completed by August 18, 2006, depositions to be taken by November 30, 2006, and fact discovery to close on December 4, 2006.

On September 14, 2006, Mark Goidell, plaintiffs' attorney at that time, sought permission to withdraw from representation and requested that the discovery deadlines be extended. At an October 23, 2006 status conference, the written discovery deadline was extended to January 12, 2007. Attorney Goidell continued to represent plaintiffs until they found new counsel.

On November 14, 2006, the Biondos served their first set of interrogatories on plaintiffs and on November 22, 2006, the City defendants did the same.

On March 5, 2007, plaintiffs' current counsel, Elliott Liebowitz, entered a notice of appearance and attended a settlement conference before the magistrate judge.

On March 20, 2007, the magistrate judge ordered the completion of written discovery by May 4, 2007.

On April 30, 2007, the City defendants filed a letter motion to compel plaintiffs to respond to the November 22, 2006 discovery requests. On May 1, 2007, the Biondos also filed a motion to compel plaintiffs to respond to the November 2006 interrogatories and provide authorizations to obtain records, including medical, income tax, and employment records. On May 1, 2007, the magistrate judge ordered plaintiffs to provide outstanding discovery items to defendants by May 7, 2007. Plaintiffs did not comply with the order and on May 24, 2007, the Biondo defendants filed another motion for production.

On May 30, 2007, the magistrate judge held a discovery
hearing and ordered plaintiffs to provide outstanding written
discovery requests to defendants by June 6, 2007.  Plaintiffs
were instructed that no further continuances would be granted and
that if plaintiffs failed to provide the outstanding discovery
items by June 6, 2007 the defendants could move for dismissal.
After plaintiffs did not comply with the order, both sets of
defendants filed motions to dismiss the action.

On June 12 and 14, 2007, plaintiffs provided some
authorizations to the defendants and responded to the defendants'
interrogatories.

On August 16, 2007, I denied the defendants' motions to
dismiss in open court and referred the Rule 37 motions for
discovery sanctions to the magistrate judge for a report and
recommendation on whether to impose lesser sanctions on the
plaintiffs and require them to pay defendants' expenses.  I also
denied plaintiffs' request that the Rule 37 motion be referred to
a different magistrate judge.

On January 28, 2008, the magistrate judge presided over a
telephone conference during which she informed the parties that
she would be recommending Rule 37 sanctions in the form of
attorneys' fees and costs.

On February 19, 2008, the magistrate judge issued a report
recommending the imposition of Rule 37 sanctions requiring

plaintiffs to pay defendants' expenses incurred in obtaining
compliance with the discovery orders. After finding that
plaintiffs' June 2007 interrogatory responses were incomplete and
unresponsive, the magistrate judge also ordered plaintiffs to
provide "adequate" responses to the defendants' interrogatories
by February 28, 2008 and gave the defendants leave to file a
motion for further sanctions if the plaintiffs did not submit
adequate responses by that date.

On February 28, 2008, a status conference was held at which
time the magistrate judge noted that plaintiffs had not submitted
the required documents and granted defendants leave to move for
dismissal.

No objections were filed to the February 19, 2008 report and
recommendation by the court's deadline of March 4, 2008.

On March 6, 2008, the City defendants renewed their motion
to dismiss pursuant to Fed. R. Civ. P. 37(b) and 41(b). On March
7, 2008, the Biondos also moved for dismissal. Both sets of
defendants also submitted documentation of the fees incurred in
connection with their motions for attorneys' fees.

On March 21, 2008, I adopted the magistrate judge's February
19, 2008 Report and Recommendation in its entirety.

On April 15, 2008, I referred defendants' motions to dismiss
and for attorneys' fees to the magistrate judge. On May 14,
2008, the magistrate judge issued a report recommending the

dismissal of the action with prejudice and an award of attorneys' fees in the amount of $3,112.50 for the City defendants and $5,030 for the Biondos.

On May 19, 2008, the Biondos wrote to the magistrate judge requesting that the recommended monetary sanctions be entered against both the plaintiffs and their attorney. However, no appeal was taken by the defendants from the magistrate judge's report and recommendation.

On May 29, 2008, plaintiffs filed their timely objections to the May 14, 2008 Report and Recommendation.

## Discussion

Federal Rule of Civil Procedure 72 provides that when ruling on an objection to a magistrate judge's report and recommendation, which is dispositive of a case,

> [t]he district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to. The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions.

Fed. R. Civ. P. 72(b)(3). Accordingly, I review Magistrate Judge Azrack's Report and Recommendation de novo.

Federal Rule of Civil Procedure 37 provides for the imposition of sanctions "[i]f a party ... fails to obey an order to provide or permit discovery." Fed. R. Civ. P. 37(b). The sanctions that may be imposed include, *inter alia,* an award of

attorney's fees, the preclusion of evidence, and dismissal. *Id.*

The purpose of Rule 37 sanctions is to (1) "ensure that a party will not benefit from its own failure to comply," (2) serve as a "specific deterrent[] . . ." and "obtain compliance with a particular order issued," and (3) "serve a general deterrent effect on the case at hand and on other litigation, provided that the party against whom they are imposed was in some sense at fault." *Update Art, Inc.*, *v. Moddin Publishing, Ltd.,* 843 F.2d 67, 71 (2d Cir. 1988)(citing *National Hockey League v. Metropolitan Hockey Club, Inc.*, 427 U.S. 639 (1976)(per curiam); *Cine Forty-Second Street Theatre Corp. v. Allied Artists Pictures Corp.*, 602 F.2d 1062, 1066 (2d Cir. 1979)).  District courts have "wide discretion in imposing [Rule 37] sanctions," but the sanction must be "just" and "relate to the particular claim to which the discovery order was addressed." *Daval Steel Prods. v. M/V Fakredine*, 951 F.2d 1357, 1365-1366 (2d Cir. 1991)(internal citations omitted).  The most severe sanctions should not be imposed unless the failure to comply with a discovery order "'is due to willfulness, bad faith, fault or gross negligence, rather than inability to comply or mere oversight.'" *Handwerker v. AT & T Corp.*, 211 F.R.D. 203, 209 (S.D.N.Y. 2002)(quoting *Hochberg v. Howlett*, 92-CV-1822, 1994 WL 174337, *3 (S.D.N.Y. 1994)); *see also Salahuddin v. Harris*, 782 F.2d 1127, 1132 (2d Cir. 1986); *Luft v.Crown Publishers, Inc.*, 906 F.2d 862, 865 (2d Cir. 1990).

The "acts and omissions of counsel are normally wholly attributable to the client" and sanctions may be imposed against a party for her counsel's misconduct. *Metropolitan Opera Ass'n, Inc. v. Local 100, Hotel Employees and Restaurant Employees Intern. Union*, 00-CV- 3613, 2004 WL 1943099, at *25 (S.D.N.Y. 2004)(quoting *Cine Forty-Second Street Theatre*, 602 F.2d at 1068). "A litigant chooses counsel at his peril, and . . .counsel's disregard of his professional responsibilities can lead to extinction of his client's claim." *Cine Forty-Second Street Theatre*, 602 F.2d at 1068.

In selecting the appropriate sanction, courts consider a variety of factors, including: "(1) the willfulness of the non-compliant party or the reason for the noncompliance; (2) the efficacy of lesser sanctions; (3) the prejudice to the other party; (4) the duration of the period of noncompliance; and (5) whether the non-compliant party had been warned of the consequences of his noncompliance." *Richardson v. New York City Health and Hospitals Corp.*, No. 05-CV-6278, 2007 WL 2597639, at *6 (S.D.N.Y. 2007)(citing *Handwerker*, 211 F.R.D. at 208 (S.D.N.Y. 2002)). No particular factor is dispositive, and "sanctions must be weighed in light of the full record in the case." *Cine Forty-Second St. Theatre Corp.*, 602 F.2d at 1068 (citing *National Hockey League*, 427 U.S. at 642).

*Reason for Non-Compliance*

Non-compliance with discovery orders will be deemed willful
"when the court's orders have been clear, when the party has
understood them and when the party's noncompliance is not due to
factors beyond the party's control." *Burgie v. Euro Brokers,
Inc.*, No. 05-CV-968, 2006 WL 845400, at *12 (E.D.N.Y.
2006)(quoting *Baba v. Japan Travel Bureau Int'l, Inc.*, 165 F.R.D.
398, 402-03 (S.D.N.Y. 1996), *aff'd*, 111 F.3d 2 (2d Cir. 1997)).

Plaintiffs failed to comply with the magistrate judge's
discovery orders issued on (1) March 20, 2007, (2) May 1, 2007,
(3) May 30, 2007, and (4) February 19, 2008.

With respect to the March and May 2007 orders, plaintiffs
provided incomplete responses in June 2007, after the court
imposed deadlines had passed and defendants had filed motions to
dismiss. Plaintiffs do not deny that the magistrate judge's
orders were clear and that they understood the orders. Rather,
plaintiffs' counsel attributes the delay to his March 2007
appearance in the case and defendants' failure to inform him of
the outstanding discovery requests until the middle of April
2007.

Plaintiffs' counsel was present at the March 20, 2007
settlement conference at which time the magistrate judge issued
an order setting new discovery deadlines. The March 20, 2007
order provided plaintiffs' counsel with the opportunity to take
notice of all of the outstanding discovery demands. Even if

defendants' counsel did not inform plaintiffs' counsel of the
outstanding discovery demands at that conference, plaintiffs' new
counsel had a duty to apprise himself of the procedural posture
of the action.  In any event, once notified of the pending
discovery requests, plaintiffs had an obligation to comply with
the magistrate's first order requiring responses to be submitted
by May 7, 2007.  If plaintiffs were unable to meet the deadline
because their new counsel had not yet had the opportunity to
review the case file, plaintiffs had an obligation to inform the
magistrate judge and request an extension, which they failed to
do.

Despite plaintiffs' failure to adhere to the court's
deadlines, the magistrate judge provided plaintiffs with another
opportunity to comply by issuing a second order that extended the
deadline to June 6, 2007.  Although plaintiffs' counsel told
opposing counsel about plaintiffs' inability to meet the June 6,
2007 deadline, plaintiffs again chose not to inform the
magistrate judge.  Plaintiffs' counsel states that his failure to
comply with the deadline was due to a health-related scheduling
conflict and that he did not think it was appropriate to explain
this reason to the magistrate judge when he requested an
extension during the May 30, 2007 conference.

Plaintiffs' explanations do not excuse them from their
obligation to communicate with the magistrate judge about their

inability to meet the court's deadlines or to conduct discovery in an expeditious manner. Plaintiffs also fail to explain how their counsel's one day absence from his practice prevented them from responding to defendants' requests that had been pending for several months.

With respect to the magistrate judge's February 19, 2008 order, plaintiffs' counsel states that he was ill with the flu at the time that the order was issued and that shortly before the order was issued he had determined and informed defendants' counsel that he intended to withdraw several of plaintiffs' claims. According to plaintiffs, but disputed by defendants, the decision to withdraw the claims mooted many of the interrogatory requests. Again, rather than inform the court of its position or request the assistance of the court to resolve a discovery dispute, plaintiffs chose instead to ignore the court's order.

The only times plaintiffs have responded to defendants' discovery demands or otherwise explained their delay to the court has been after defendants have filed motions to dismiss. Although plaintiffs' counsel is correct that the motions to dismiss delayed discovery, after this Court denied the defendants' motions in August 2007, plaintiffs' obligation to respond to defendants' discovery requests resumed. The defendants' alleged unwillingness to discuss settlement or discovery with the plaintiffs after the August 2007 decision did

not relieve plaintiffs of their discovery obligations.  The
documents requested were under plaintiffs' control and could have
been produced in a timely manner.  Moreover, if plaintiffs were
concerned that the magistrate judge was biased against them and
that the proceedings were being conducted in an openly hostile
manner, as plaintiffs' counsel now suggests, they had the
opportunity and obligation to inform the undersigned promptly.  I
conclude that plaintiffs' explanations for their non-compliance
support a finding of wilful disregard.

*Lesser Sanctions*

As an alternative to dismissing the action, a court must
consider the efficacy of lesser sanctions, including an award of
defendants' expenses,  issuing additional warnings, striking
plaintiffs' affirmative defenses to defendants' counterclaims,
and precluding plaintiffs' claims related to the undisclosed
information.

Here, plaintiff defied the magistrate judge's February 2008
order even after she recommended monetary sanctions for
plaintiffs' failure to comply with the 2007 discovery orders.
The fact that plaintiffs resumed the same behavior even after the
magistrate judge recommended sanctions demonstrates that monetary
sanctions will not be effective in deterring plaintiffs from
future noncompliance.  Given plaintiffs' repeated failure to heed
the court's warnings in the past issuing additional warnings

would be futile. Striking plaintiffs' affirmative defenses will
not have the desired effect since plaintiffs have already
withdrawn three affirmative defenses. The Court could also
preclude plaintiffs' claims that rely on the undisclosed
information. However, because the unanswered interrogatories and
document requests relate to damages, the distinction between
preclusion and dismissal is negligible. This factor as well
weighs in favor of dismissing the action.

*Prejudice to Other Parties*

The behavior exhibited by plaintiffs has prejudiced
defendants by delaying the resolution of the claims and
increasing the costs of litigation. The parties have not made
any progress with discovery or moved closer to trial readiness.
This factor as well weighs in favor of dismissing the action.

*Duration of non-compliance*

More than a year has passed since the magistrate judge
issued the first discovery order that plaintiffs ignored. Only
after defendants moved for dismissal did plaintiffs respond to
the outstanding discovery demands and even then, the responses
were incomplete and unresponsive. This factor as well weighs in
favor of dismissal.

*Warnings*

The record clearly establishes the fact that plaintiffs were
provided with more than one warning that failure to comply with

the court's discovery orders would lead to sanctions.  When
issuing the May 30, 2007 order, the magistrate judge explicitly
gave defendants leave to file motions to dismiss in the event
that plaintiffs failed to comply.  In her February 19, 2008
report and recommendation, the magistrate judge also clearly
stated that defendants would be given leave to move for further
sanctions under Rule 37 if plaintiffs failed to comply with the
order.

Having reviewed the above factors, I find that plaintiffs'
behavior warrants the dismissal of the action with prejudice.
Accordingly, I adopt the magistrate judge's Report and
Recommendation to dismiss the action with prejudice.

*Attorneys' Fees and Costs*

Following the Court's imposition of sanctions against
plaintiffs in the form of payment of defendants' expenses with
respect to discovery, the City defendants have requested
$5,187.50 in attorney fees and the Biondos have requested $15,135
in attorney fees.

The Second Circuit uses the "presumptively reasonable fee,"
known as the "lodestar figure" (or "lodestar") in other circuits,
to determine reasonable attorneys' fees for federal claims.  *See
Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of
Albany*, 493 F.3d 110 (2d Cir. 2007); *Cruz v. Local Union No. 3 of
the International Brotherhood of Electrical Workers*, 34 F.3d

1148, 1159 (2d Cir. 1994); *Heng Chan v. Sung Yue Tung Corp.*, No. 03-CV-6048, 2007 WL 1373118 (S.D.N.Y. 2007).  The presumptively reasonable fee "is arrived at by 'multiplying the number of hours reasonably expended on the litigations ... by an hourly rate.'" *Kirsch v. Fleet Street, Ltd.*, 148 F.3d 149, 172 (2d Cir. 1998)(quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433(1983)).

1. Hourly Rates

The reasonable rate used to determine the amount of attorneys' fees to award is calculated according to the prevailing rates in the district in which the court sits.  *Polk v. N.Y. State Dep't of Corr. Servs.*, 722 F.2d 23, 25 (2d Cir. 1983).  In order to set the hourly rates, courts compare the attorneys' usual billing rates with the prevailing market rates in the applicable district.  *Miele v. New York State Teamsters Conference Pensions & Retirement Fund*, 831 F.2d 407 (2d Cir. 1987).  The prevailing market rate is determined by "rely[ing] on [the court's] own knowledge of comparable rates charged by lawyers in the district," *Morris* v. Eversley, 343 F.Supp.2d 234, 345 (S.D.N.Y. 2004)(citing *Ramirez v. New York City Off-Track Betting Corp.*, No. 93-CV-0682, 1997 WL 160369, at *2 (S.D.N.Y. 1997)) "as well as on evidence submitted by the parties." *Stirrat v. Ace Audio/Visual, Inc.*, No. CV-02-2842, 2007 WL 2229993, at *2 (E.D.N.Y. 2007)(citing *Farbotko v. Clinton County of New York*, 433 F.3d 204, 209 (2d Cir. 2005)).

In the Eastern District, partners' rates have ranged from
$200 to $375 per hour, associates' rates have ranged from $150 to
$250 per hour, and paralegal rates have ranged from $60 to $75
per hour. *Expeditors Int'l of Washington, Inc. v. Rubie's
Costume Co., Inc.*, No. 03-CV-3333, 2007 WL 430096, at *2
(E.D.N.Y. 2007); *Commission Express Nat'l, Inc. v. Rikhy*, No.
03-CV-4050, 2006 WL 385323, at *5-6 (E.D.N.Y. 2006); *Aiello v.
Town of Brookhaven*, No. 94-CV-2622, 2005 WL 1397202, at *5
(E.D.N.Y. 2005)(collecting cases).

Assistant Corporation Counsel Brooke Birnbaum, attorney for
the City defendants seeks an hourly rate of $250, citing to a
Southern District of New York case where an assistant corporation
counsel was awarded that rate. *See City of New York v. Deborah
Pollak et al.,* 03-CV-0253 (S.D.N.Y. 2006). I find that $250 per
hour is appropriate.

Attorney Sharon Simon, counsel for the Biondo defendants
seeks an hourly rate of $300 per hour. Although she has failed
to provide any information regarding her level of experience, the
website for her firm, Steinberg, Fineo, Berger & Fischoff, P.C.,
states that she graduated law school in 1980 and has been
practicing employment law since 1988.
http://sfbblaw.com/Simon.htm (last accessed on June 12, 2008).
Given Simon's level of experience and the rates typically awarded
in the district, I find that $250 per hour is an appropriate

rate.

The Biondos also seek fees for a paralegal whose hourly rate is $125 per hour. Because paralegals in the Eastern District are typically awarded $75 per hour I apply an hourly rate of $75.

2. Hours Expended

"[A]ny attorney ... who applies for court-ordered compensation ... must document the application with contemporaneous time records." *New York State Ass'n for Retarded Children, Inc., v. Carey*, 711 F.2d 1136, 1148 (2d Cir. 1983). These records should specify, for each attorney, the date, the hours expended and the nature of the work. *Id.* However, "[i]t is not required that counsel describe in great detail how billable time was spent; it is sufficient to identify the general subject matter of time expenditures." *Aiello v. Town of Brookhaven,* No. 94-CV-2622, 2005 WL 1397202, at *2 (E.D.N.Y. 2005)(citing *Perdue v. City Univ. of New York*, 13 F.Supp.2d 326, 345 (E.D.N.Y. 1998)).

Attorney Birnbaum's time records state that she spent 20.75 hours in connection with obtaining plaintiffs' compliance with the discovery orders, but does not provide details of the tasks performed. Given that the discovery dispute in this case was not complicated and that none of the submissions prepared were lengthy or detailed, the 20.75 hours requested by Birnbaum is excessive. For the same reasons, I find that the 50 hours

expended by Simon and 1 hour expended by a paralegal are also excessive.

Where the hours billed are excessive, the Court may exclude these hours from the calculation of fees, *Perez v. Jasper Trading, Inc.,* No. 05-CV-1725, 2007 WL 4441062, at *10 (E.D.N.Y. 2007), or impose an across the board percentage cut. *In re "Agent Orange" Products Liab. Litig.,* 818 F.2d 226, 237-238 (2d Cir. 1987). I therefore apply an across the board cut for the expenses sought by both sets of defendants, cutting Birnbaum's hours to 10 hours, Simon's hours to 15 hours and the paralegal's hour to ½ hour. This results in an award of attorney's fees of $2,500 for the City defendants and $3,787.50 for the Biondos ($37.50 for the paralegal and $3,750 for Simon's time).

Accordingly, I award attorneys' fees to the Biondos in the amount of $3,787.50 and to the City defendants in the amount of $2,500.[2]

---

[2] I do not consider the Biondos' request that plaintiffs' counsel be held jointly and severally liable for the attorneys' fees awarded since the Biondos did not appeal the magistrate judge's report and recommendation.

## Conclusion

For the reasons set forth above, I adopt the magistrate judge's Report and Recommendation in part and modify it in part. The clerk is directed to transmit a copy of the within to the parties and to the magistrate judge.

SO ORDERED.

Dated :   Brooklyn, New York
          June 30, 2008

          By:    /s/ Charles P. Sifton (electronically signed)
                 United States District Judge